**BROOKS et al. v. HANCOCK.    (No. 2827.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 6, 1923.)

**1. Marriage 50(5)—Evidence held to support finding of common-law marriage.**

Proof that a man and woman lived together, occupying the same house and bed, that three children were born, that the man referred to the woman as wife on several occasions, that the tombstone of one child designated him as their child, and that they were formally married 14 years after the relation started, *held* sufficient to support finding of a common-law marriage.

**2. Marriage 13 — Common-law marriage valid.**

A valid common-law marriage may be contracted in Texas.

**3. Marriage 22 — Neighborhood recognition of marriage relation not essential to common-law marriage.**

Recognition of parties as husband and wife by neighbors is not essential to constitute a common-law marriage.

Appeal from District Court, Titus County; R. T. Wilkinson, Judge.

Suit by M. P. Brooks and others against George Hancock. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. A. Ward, of Mt. Pleasant, for appellants.

I. N. Williams and S. P. Pounders, both of Mt. Pleasant, for appellee.

HODGES, J.' The appellants sued the appellee to recover a tract of 39 acres of land situated in Titus county and a part of the Neville survey. They claim the title as the collateral heirs of A. J. Neville, who once owned the land. The appellee was in possession, and claims by purchase from Mary Neville, the widow of A. J. Neville, who was also dead at the time of the trial. The validity of the appellee's title rests upon proof that Mary Neville was the common-law wife of A. J. Neville in 1883, when the land in controversy was acquired. It is conceded that, if she was, the appellee has a good title; and that, if she was not, he has none.

The following are, in substance, the findings of fact filed by the trial court: (1) Some time about the year 1880, A. J. Neville and Mary J. Neville began living together. They occupied the same house, the same bed, as if they were husband and wife. Mary did all of the housework, the cooking, and assisted A. J. Neville in making crops on the farm during that time. There were born to them three children, two of whom died in infancy; the third was killed by lightning when 14 years of age. (2) While A. J. and Mary Neville were living together, Neville referred to her as his wife on several occasions, and they continuously sustained the relations of husband and wife, so far as the public knew, until sometime about the year 1894, at which time a marriage license was procured, and they were legally married by a justice of the peace. Their son Willie, who was killed by lightning some time in December, 1895, was buried, and his grave marked with a stone bearing this epitaph:

---

"Willie, son of A. J. and M. J. Neville, born Sept. 23, 1880; died Dec. 24, 1895.

"Father and Mother."

The remaining findings of the court relate to the chain of title under which the appellee claims.

Upon the facts found, the court concluded that Mary J. Neville" was the common-law wife of A. J. Neville at the time he purchased the land in controversy; that it was their community property, and at his death the title passed to her.

Appellants assign error to two findings of fact made by the court. The first complained of is as follows:

"I find that while A. J. and Mary J. Neville were living together the said A. J. Neville introduced Mary J. Neville on several occasions as his wife, and that they occupied the relations of husband and wife, so far as the public knew, until some time about the year 1894, when they were married," etc.

[1] The contention is that this finding in not supported by the evidence, because only two witnesses testified to hearing A. J. Neville refer to Mary Neville by the name of wife, and they each testified to hearing the reference made only once. The second assignment objects to this finding:

"I find that while A. J. and Mary J. Neville were living together prior to the time of their statutory marriage, so far as the record shows, they rarely ever went out into society together; but on different occasions parties visited their house, and Mary J. Neville was introduced by A. J. Neville as his wife, and she prepared the meals, kept the house, and they ate their meals at the same table, and they occupied the relations of husband and wife; and while so living together the said A. J. Neville purchased the land in controversy from his brother, and took a deed therefor, and he and Mary continued to live on the two tracts of land until the time of his death."

The objection is that the evidence was insufficient to show that, at the time the deed was taken (in 1883) to the land, Neville claimed Mary as his wife; that only two witnesses testified to hearing Neville call Mary his wife prior to that time; that no one testified that she bore the reputation of being his wife in the community. It is contended that if the findings be eliminated the judgment is without legal support.

[2] That a valid common-law marriage may be contracted in Texas is no longer an open question. Edelstein v. Brown (Tex. Civ. App.) 95 S. W. 1126; Walton v. Walton (Tex. Com. App.) 228 S. W. 921. Both parties to this transaction are dead, and their agreements, if they had any, and their intentions for living together, with all the appearance of husband and wife for so many years, can only be ascertained by what they did and the manner in which they treated each other. The testimony is rather voluminous. A fair inference, however, justifies the conclusion that all that A. J. and Mary Neville ever did in that community was entirely consistent with the conclusion drawn by the court—that they had agreed to live together as husband and wife. Appellants point to one circumstance which, they say, tended to show the absence of such an agreement, and that is the fact that they were not commonly reputed in that neighborhood to be husband and wife.

[3] It appears to have been generally known that A. J. and Mary Neville had not prior to 1894 been married according to the forms prescribed by statute. That fact alone would account for the absence of any popular recognition of them in that community as husband and wife, even though there might have existed a valid marriage agreement. Recognition of parties as husband and wife by neighbors is not essential to constitute a valid common-law marriage; it is only a circumstance to be weighed with others. Nor does the absence of such popular recognition, or reputation, furnish conclusive evidence that the contract upon which common-law marriages are based did not in fact exist.

We conclude that the testimony was amply sufficient to justify the findings of fact made by the trial judge, and that his findings were sufficient to support his legal conclusions. The judgment will therefore be affirmed.