## In re Paul S. DILLON and Helen F. Dillon, Debtors.

### Bankruptcy No. 89B–06914.

United States Bankruptcy Court, D. Utah, C.D.

April 3, 1990.

Robert Fugal and J. Kevin Bird, of Bird & Fugal, Provo, Utah, for Paul S. Dillon and Helen F. Dillon, debtors.

Dennis C. Wilson, of Harding & Associates, American Fork, Utah, for Provo School Dist. Credit Union, creditor.

## MEMORANDUM DECISION

JUDITH A. BOULDEN, Bankruptcy Judge.

This contested matter came before the court on the motion of the debtors Paul and Helen Dillon (Helen Dillon hereinafter referred to as Dillon) under 11 U.S.C. § 522(f)[1] to avoid a judicial lien held by Provo School District Credit Union (Credit

---

**1.** 11 U.S.C. § 522(f) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

Union). Dillon asserts that the property to which the lien attaches qualifies under the provisions of the Utah Exemptions Act[2] as either having particular sentimental value or as a motor vehicle used in a debtor's business or profession.

## JURISDICTION

The Court has jurisdiction over the subject matter of and parties to the contested matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue in this division is proper and this is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (K).

## FACTS

The Credit Union obtained a judicial lien attaching to both Dillon's 1983 Pontiac automobile and her 30–30 Marlin rifle on October 27, 1989.[3] Dillon filed this chapter 7 petition on November 13, 1989, and claimed both the car, valued at $2,000, and the rifle, valued at $80 as exempt under the Utah Exemptions Act. She asserted that both items were of particular sentimental value to her, and that the car was a motor vehicle used in her business or profession.

Dillon originally won the car as a prize while participating in an endurance contest promoted by a local water park. The contest required participants to float in a swimming pool with the winner receiving a car in reward. Dillon was successful in floating the longest of any of the eighteen other contestants and consequently won the car. Dillon testified that the eight-day contest was stressful and very difficult. The arduous circumstances surrounding the acquisition of the vehicle allegedly generated in her a particular sentimental attachment to the car.

Dillon also claimed that she used the car in her various businesses which included photography, professional writing, and clothes manufacturing. She asserted that as a photographer she used the car to drive to scenic locations for photo opportunities.

As a writer she used the car to drive to scenic locations where she would sit in the car to perform research and write. Dillon claimed that some of her most peaceful moments as a writer were those she spent sitting alone in the car. Dillon stated that as a clothes manufacturer she used the car to deliver materials and patterns for manufacture and to deliver merchandise to people whom Dillon hoped would sell the finished product. She claimed the car was necessary to the success of each of these enterprises and should therefore be exempt from the Credit Union's lien.

No significant evidence was presented concerning the existence of any of these alleged businesses. The debtor failed to introduce into evidence such items as business records, tax returns, a tax identification number, a list of clientele, or a meaningful description of the product or services generated. She did however testify that she made a total of twenty-five dollars from these various enterprises in 1989. Dillon also testified that she had been employed for approximately one and a half years as an LPN, although she subsequently became unemployed and has been supported by her husband for the past year. Her various businesses now supplement that support.

Dillon also seeks to exempt a 30–30 Marlin rifle which she asserted she used on family hunting trips. She had previously owned another rifle which she had used as a child and which she later lost as the result of a divorce settlement. Dillon purchased the present rifle as a replacement for the original. She testified that she has carried the replacement rifle with her on hunting trips but, because it has no scope and she cannot see very far, has seldom shot it. Dillon claimed that her emotional attachment to the replacement rifle flowed through from the previous rifle because of pleasant childhood memories associated with its use on family hunting trips.

**2.** Utah Code Ann. §§ 78–23–1 to –15 (1987). Pursuant to § 78–23–15, Utah has "opted out" of the federal exemptions provided by 11 U.S.C. § 523(d).

**3.** *Provo School District Credit Union v. Larry A. Steere and Helen J. Steere,* Case No. 883–289 CV, Circuit Court of Utah County (Execution ordered October 27, 1989). Helen J. Steere is the debtor herein.

## ARGUMENT

### Sentimental Value

■ Utah Code Ann. § 78–23–8(1)(c)[4] provides that Dillon is entitled to an exemption in property valued up to $500 consisting of an heirloom or other item of particular sentimental value. The statute is phrased in the singular and implies that only one item which has particular sentimental value to the individual is exempt. Dillon therefore cannot claim an exemption under this section for both the car and the rifle, but she may choose to exempt either one of the items assuming it has actual sentimental value.[5]

The court must determine whether either of these items actually has particular sentimental value to Dillon or if the value is in reality of an economic nature. If Dillon suddenly developed a sentimental attachment as a result of her filing for relief under Chapter 7 the exemption would not apply.[6]

The Utah Exemptions Act was modeled after the Uniform Exemptions Act.[7] The Uniform Act contains an exemption for "family portraits and heirlooms of particular sentimental value to the individual."[8] The $500 limitation protects items that have relatively little monetary value compared to the leverage afforded the creditor by the threat of levy and sale. The exemption was designed to shield the debtor's assets when the monetary gain to a levying creditor would be minimal compared to the emotional deprivation suffered by the debtor and the debtor's family.[9]

■ There is a dearth of case law addressing the sentimental value exemption and, as a result, the Court turns to other sources for a definition of sentimental value. Webster's dictionary defines "sentimental" as "marked or governed by feeling, sensibility, or emotional idealism". *Webster's Third New International Dictionary* 2069 (3rd 1976). An item which has sentimental value therefore, is one to which the owner has an excessive emotional, as opposed to a rational, tie. That tie must not be economic and cannot have arisen primarily because of the bankruptcy filing. "[S]entiment must be measured by objective criteria, lest every debtor suddenly develop a sentimental attachment triggered more by the bankruptcy filing then by any pre-petition life events." *In re Leva*, 96 B.R. 723, 729 (W.D.Tex.1989).[10] The *Leva* court, concerned with debtors suddenly claiming that a piece of jewelry had sentimental value solely to qualify for the Texas exemption, posed the following question.

> How to measure sentimental attachment? With respect to some items, such as wedding rings, that attachment is well-nigh presumed under the mores of this state (as in most states). For other items, the court will have to inquire into the peculiarities of the debtor's life histo-

---

4. § 78–23–8 states in relevant part:
   (1) An individual is entitled to exemption of the following property up to an aggregate value of items in each subparagraph of $500:
   (c) An heirloom or other item of particular sentimental value to the individual.

5. An engagement ring and a wedding ring have traditionally been considered a single item for purposes of the Utah sentimental value exemption. A car and a rifle, however, are not items of like kind or that would be traditionally viewed as a unit.

6. The exemption is not to be used as a "wild card" exemption like that previously found in 11 U.S.C. § 522(d)(5). That exemption was specifically rejected by the Utah legislature when it chose to opt out of the federal scheme.

7. "The Utah Exemptions Act, like Section 522(d), is drawn from the Uniform Exemptions Act." *In re Neiheisel*, 32 B.R. 146, 162 (Bankr. Ut.1983).

8. Unif. Exemptions Act § 8, 13 U.L.A. 228 (1982).

9. "The inclusion of family portraits and heirlooms of sentimental value in subsection (a)(3) recognizes that the debt-paying value obtainable by levy and sale of such property by a creditor is unlikely to be proportionate to the deprivation suffered by the *individual and his family*, and the $500 value limitation on the exemption allowable in any such item of property is a safeguard against abuse of this provision." Comments to § 8 U.L.A. at 229.

10. In *Leva*, the court did not directly address a sentimental value exemption, but addressed whether certain items of jewelry were exempt as clothing.

ry that have injected sentimental value into cold gold. It is safe to say that a debtor must have first formed this attachment to the jewelry long before the bankruptcy filing. Generally, the longer one has owned and worn an item, the stronger the emotional attachment, though mere length of possession should not be dispositive. A court should also look at how the jewelry was acquired. Jewelry bought or given to commemorate seminal events in the human cultural experience enjoyed by the rich and non-rich alike, may deserve the protection of the exemption.

*Leva*, 96 B.R. at 729.

■ Gifts from family or friends commemorating weddings, birthdays, graduations, anniversaries, or retirement are in celebration of events which this court recognizes as examples of the "seminal events in the human cultural experience" referred to in *Leva*. In addition, an individual may have a unique life event which is outside the common cultural experience, but which society would generally recognize as significant and may be commemorated by a particular object, thus giving rise to a sentimental attachment. For example, a gift may be received to commemorate overcoming a serious medical disability or illness, a medal may be earned by winning a sporting event after lengthy training and competition, or a person may hold property which may increase in sentimental value because of the acquired skill or expertise of the individual over a period of time, such as an artist's or writer's first work. Such objects would generally be acknowledged as objects worthy of emotional or sentimental attachment. Conversely, items acquired by luck or happenstance, not through the prolonged, determined and serious effort of the debtor, should not qualify merely because the debtor can evidence a tangential emotional tie to the item. Likewise, items which merely provide the debtor with some sort of economic advantage, as opposed to an attachment which tugs at the heart of human emotion, should not qualify.

■ The manner of acquisition may be another criteria used to evaluate sentimental attachment. Gifts are more likely to qualify than items purchased by the debtor. Whether from friends or family members, gifts are often an extension of the giver and thus have an extrinsic value which represents more than the actual value of the object. Items purchased by the debtor are more suspect of bona fide emotional attachment. For example, the fact that a consumer experiences difficulty in completing an installment purchase of a particular item and then experiences the accompanying relief occasioned by no longer having to make monthly payments, are circumstances which fail to generate the kind of emotional attachment envisioned by this exemption.

■ The sentimental value exemption allows Dillon to claim one item which has a value of $500 or less, and the item must either be an heirloom or have emotional, as opposed to economic, significance. The statute was not meant to allow Dillon to choose which of her belongings she suddenly forms a sentimental attachment to once she filed for relief under the Bankruptcy Code. The statute does not lend itself to an interpretation that a car won in a promotional floating contest should be exempt. If the creditor levies upon the car, Dillon has not lost an irreplaceable item of value to her in her life's history. The acquisition of the vehicle does not represent a seminal event in Dillon's life. She merely acquired the vehicle in an unusual way. Though her efforts may have been arduous at the time, they are no more so than those made by a debtor who makes installment payments on a five-year loan to acquire a vehicle. Dillon's feelings toward the car are more akin to the feeling of gaining an economic advantage rather than of establishing a sentimental attachment.

■ Likewise, Dillon's attachment to the rifle does not qualify for the exemption. Her testimony as to the length of time she has owned the rifle is unclear. It was not a gift, nor did the rifle commemorate any specific event in her life. It is not credible that Dillon holds an emotional bond to a rifle which she purchased to replace one lost in her second divorce proceeding so

that she could go hunting once she was single again.

Motor Vehicle Exemption

Dillon also asserted the car was exempt because the motor vehicle was used in her business or profession. Utah Code Ann. § 78–23–8(2) states in relevant part that a debtor is entitled to a $1,500 exemption in a motor vehicle where "such motor vehicle is used for the claimant's business or profession. Business or professional use of a motor vehicle does not include transportation to and from a claimant's place of work or business."[11] Dillon claimed that she used the car to travel to scenic places to write, take pictures, and perform research. She also claimed she needed the car in her clothing business to transport clothes and materials from manufacturer to seller.

The precursor to an exemption under this section is that Dillon has a trade or business. Dillon provided no evidence of an ongoing business, though she testified that her total income for such endeavors in 1989 was twenty-five dollars. The debtor did not provide the court with business records, tax returns, samples of her work, or any other indicia of a legitimate ongoing business.

Instead, Dillon argues that her prospective business ventures should be sufficient to qualify for the exemption. Such an argument portends substantial abuse of the system from debtors anticipating future activity which will "prove up" an exemption and ignores the clear language of the statute which requires a current, not an anticipatory use.

## CONCLUSION

Dillon is not entitled to an exemption under Utah Code Ann. § 78–23–8 in either the car or the rifle as items of particular sentimental value. The statute is meant to protect items of relatively little monetary value which would cause great emotional loss to the debtor or the debtor's family if a creditor levied upon the item. Certainly, sentimental attachment may be presumed for certain items common to the human experience. With other items however, the court must consider objective criteria to determine whether it is reasonable to believe the item has sentimental value for the debtor. Dillon failed to present credible evidence sufficient to satisfy the court that her emotional attachment arose other than as a result of the filing of her chapter 7 petition. Nor is Dillon entitled to the business or professional use of a motor vehicle exemption because she provided no credible evidence that an ongoing business existed. The motion to avoid the lien of the Credit Union is denied.

---

**11.** A car is exempt as a tool of the trade only where the debtor is uniquely dependent on its use. "Generally, a car is classified a tool of trade only if the occupation of its owner is uniquely dependent on its use. It is not sufficient if one's dependence on the car is limited to use for travel to and from work." *In Re Dubrock,* 5 B.R. 353, 354 (W.D.Ky.1980).

The Tenth Circuit, interpreting the Wyoming exemption statute which is similar to the Utah statute, has held that the debtor's car must be specially suited for a particular occupation in order for the car to be eligible for the tool of the trade exemption. "Even in the more compelling cases in which a debtor utilizes certain specialized tools, equipment, or machinery in his or her trade and must transport these to various job sites, a substantial number of courts have denied an exemption for a vehicle." *Johnston v. Barney,* 842 F.2d 1221, 1223 (10th Cir.1988).