**In re Rodney D. HENDRICK (S.S. #
438–50–6808), Debtor.**

**Bankruptcy No. 83–00787.**

United States Bankruptcy Court,
M.D. Louisiana.

Jan. 11, 1985.

See also, Bkrtcy., 45 B.R. 976.

William E. Steffes, Baton Rouge, La., for debtor.

David S. Rubin, Baton Rouge, La., for trustee.

John C. Anderson, Baton Rouge, La., for mover in adverse action.

## OPINION ON TRUSTEE'S OBJECTIONS TO CLAIM OF EXEMPTIONS

WESLEY W. STEEN, Bankruptcy Judge.

### I. Facts [1]

The Debtor (hereinafter "Rodney") and Judith Elaine Polk (hereinafter "Judy") were married in April, 1965. In October, 1981, Rodney and Judy separated in fact; on April 2, 1982, a petition for legal separation was filed. On April 15, 1983, a divorce was granted based on mutual fault. On November 21, 1983, Rodney filed this Chapter 11 case. On January 31, 1984, Don Starns was appointed trustee in the case with the agreement of all parties, including Rodney.

Substantially all of Rodney and Judy's joint property was acquired during the time that they were married, residing in Louisiana, and living under the community property regime established by Louisiana law.

In the schedules filed with the bankruptcy petition, Rodney listed a summary of household goods located at 11937 Oak Shadow Drive (his former residence) (with a stated value of $146,000); he also listed a summary of goods at 9472 Meredith Street (with a stated value of $4,000). Rodney claimed exemptions for his entire list of household goods, valued at $150,000.

On April 6, 1984, the trustee filed a motion to amend the schedules and attached a nine page inventory of property at the 11937 Oak Shadow Drive address, a one page inventory of property at 9546 Camry, and a two page inventory of property at 9472 Meredith.[2]

On April 19, 1984, there was a hearing on amendment of the schedules. Judy attended through her attorneys and made no objection to the amendment, reserving the right to contest ownership of the property that was listed in the amendment. With that reservation, the schedules were ordered amended on that date.

On September 13, 1984, the trustee filed an objection to exemptions claimed by Rodney. The objection was not specific.[3] A hearing was held on December 4, 1984, to determine objections to exemptions. At the hearing, with consent of all parties, the Court heard evidence and agreed to determine the ownership of property listed in the amended schedules as well as the objections to exemptions.

The legal issues in this case are difficult enough. The enormous amount of factual detail, however, makes the determination of these issues almost unmanageable.

In the memorandum of authorities objecting to the exemption claims, counsel for

---

1. The facts of this case are more fully set out in a prior opinion rendered on confirmation of a plan of reorganization. This opinion repeats only those facts salient to the instant decision and adds facts not pertinent to the earlier decision.

2. Oak Shadow Drive was Judy and Rodney's residence when they were married; when the couple separated, Judy continued to reside at Oak Shadow Drive while Rodney obtained other lodgings. The Court assumes that the Camry address and the Meredith address were additional residences or storage places where Rodney kept property that he took from the matrimonial domicile.

3. As reported in a prior decision, this case has been bitterly and vigorously contested by Judy and her family. The case record is beginning its fourth volume of pleadings; five adversary proceedings have been filed to date. The Debtor's residence (a twenty-room home that sold in these proceedings for approximately $600,000) was inventoried to produce the nine-page list of household furnishings and personal effects. In all this confusion, it was difficult for the trustee to ascertain from the estranged former spouses any coordinated declaration of exemption claims. The trustee therefore proceeded in an adversary action through interrogatories to determine the exemption claims. On November 6, 1984, Judy filed her list of exemptions. Judy and Rodney have both waived the timeliness of the filing of the trustee's objections.

the trustee took the first giant step to manage the huge volume of data. Attached to the memorandum is a list of all of the property in question, divided into six categories. Each category is listed in a separate schedule.

■ The Court can dispense very quickly with the items listed in Exhibits D, E, and F. Exhibit D is characterized by the trustee as property that was inadvertently included in the amended schedules, but should not be included in the schedules because each item is the separate property of Judy Polk. There was no dispute on this point, and, accordingly, the property on Exhibit D is found not to be property of the estate and is ordered deleted from the schedules. The property listed on Exhibit E attached to the trustee's memorandum is characterized by the trustee as property that was inadvertently included in the amended schedules, but should not be included in the schedules because that property has been determined by the trustee to be property of Rodney's children in which Rodney has no interest. Accordingly, the property listed on Exhibit E to the trustee's memorandum of authorities is ordered deleted from the schedules.[4] The property listed on Exhibit F to the trustee's petition is acknowledged by all parties to be property of the former community for which no party has claimed any exemption. For reasons assigned in a prior opinion in this case,[5] that property is found to be property of the estate. Since no exemption has been claimed by any party with respect to this property, it is also found not to be exempt.

■ In Exhibit C to the trustee's memorandum of authorities, there is another category of property that does not require extensive treatment in this opinion because it is listed as "property claimed as separate and not exempt." Since this property is asserted to be Rodney's separate property, and since no exemption is claimed, that property is clearly property of the estate and not exempt. The Court so finds.

■ Exhibit C also lists in IV "Claimed as Community and Not Exempt." Since there is no dispute with respect to this property, the property is found to be community property and property of the estate; since no exemption has been claimed by any party, the property is not exempt.

In summary, Rodney's schedules were amended on April 19, 1984, and the schedules are hereby further amended to delete the items mentioned in the preceding paragraphs. With these deletions, the amended schedules now accurately reflect the property of the estate except for the deletions that will be made later in this opinion.

## II. The Law and its Application to the Facts

■ Section 541 of the Bankruptcy Code includes in the debtor's estate, as property of the estate, all of the debtor's community property and all of the debtor's separate property, whether or not the property is exempt; all of the community property in which the debtor had an interest is included in the property of the estate, even the interest of the non-debtor spouse.[6]

Section 522 of the Bankruptcy Code allows a debtor exemptions. The debtor must claim the exemptions. If the debtor does not, his dependents may; the spouse of a debtor is defined as a dependent, whether or not she is actually a dependent.[7] If the debtor or a dependent claims an exemption, and if there is no objection,

4. In addition, in testimony it was established that a two inch silver bell was listed in the schedules erroneously because this was property of Judy's daughter. All parties concede this issue, and this item shall be deleted from the schedules.

5. In a prior opinion in this case relating to plan confirmation, the Court concluded that § 541 included·in the estate property of the former community of spouses whose community property regime terminated prior to the filing of bankruptcy by one of the spouses but whose property was not partitioned prior to that filing. The reasoning of that earlier opinion is adopted here by reference.

6. Footnote 5, *supra*.

7. § 522(*l*).

then the property is exempt.[8] The exemptions apply separately to each debtor in a joint case.[9] A debtor in Louisiana is entitled to exemptions specified by Louisiana law and is not entitled to exemptions specified by federal law.[10] The Louisiana Constitution, Article XII, Section 9, directs the legislature to provide exemptions. La.R.S. 13:3881(A) (as applicable here) provides exemptions for the following things:

  A. Household goods

  1. Clothing

  2. Bedding and linens

  3. Chinaware

  4. Glassware

  5. Living room, dining room, bedroom furniture

  6. Cooking stove

  7. Heating and cooling equipment

  8. One non-commercial sewing machine

  9. Equipment for required therapy

  10. Kitchen utensils

  11. Pressing irons

  12. Washers, dryers, refrigerators, deep freezes

  B. Family portraits

  C. Arms and military accoutrements

  D. Musical instruments

The task at hand then is two-fold. First, the Court must decide the ownership of some items of property listed in the schedules; if the property is either property of the former community existing between Rodney and Judy or is Rodney's separate property on the date of filing, then that property is property of the estate. Second, the Court must determine the trustee's objections to claims of exemption.

At the hearing on December 4, with the consent of the trustee and Rodney, Judy raised three objections to the inclusion of property as property of the estate. Each of the theories applies to different pieces of property; under any of the theories, the property so classified would be Judy's separate property and not property of the community or Rodney's separate property.

■ With respect to some of the items, Judy asserts that the property was not owned by the community but rather was provided to Judy and Rodney for their use and enjoyment; Judy asserts that the property was to revert to Judy's parents, the donors, in case Judy and Rodney ceased to use it. Louisiana does not recognize any such reversionary interest. Louisiana does recognize a conditional donation and does recognize a right of use, called a usufruct. However, Judy presented no evidence with respect to any such limitation on the transfer of the property to her and her former husband. Since all of the property thus transferred was tangible movable property, a donation of full ownership of the property could be made simply by delivery, without any other formality,[11] but if the donation were merely the donation of a usufruct of the property, then the donation of that usufruct would need to be executed before a notary public and two witnesses, since the right of usufruct is an incorporeal right.[12] Judy simply has not met the burden of proof to show that the transfer of possession of these items of furniture and other personal effects was anything other than the donation of this property in full ownership.

In fact, Judy's testimony was quite vague with respect to any lingering right her parents might retain over the property; her testimony was internally inconsistent and failed to establish any clear legal right that her parents might have. The Court is not suggesting that Judy was anything less than fully honest in her testimony. The Court's evaluation is simply that the duty and obligation that Judy senses is the type defined by La. CC Art. 1757 as an "imperfect obligation." Such an obligation is defined by the Civil Code as one that:

---

**8.** *id.*

**9.** § 522(m).

**10.** 11 USC § 522(b) as implemented by La. R.S. 13:3881(B).

**11.** La. CC Art. 1539.

**12.** La. CC Art. 1536.

"... operates only on the moral sense, without being enforced by any positive law ... [it] creates no right of action, nor has it any legal operation. The duty of exercising gratitude ... is an example of the this kind of obligation."

Judy testified, in essence, that it was the practice in her family not to dispose of gifts from family members. The gifts would simply be kept and utilized by the donee. When the donee ceased to have a use for the gifts, then the donee would return the gift to the donor. The Court understands this frequent practice in families and salutes Judy's recognition of her moral obligation. The law, however, does not recognize such imperfect obligations, and, consequently, the Court determines that with respect to the items mentioned, the full ownership of this property was donated to Judy and Rodney.

■■■ Judy next asserts that some of the items were gifts made to her individually and not both to herself and to Rodney. With respect to some items,[13] Rodney had no contrary evidence and, consequently, Judy. has met her burden of proof and these items are determined to be Judy's separate property. These items shall be deleted from the schedules; they are not property of the estate. With respect to the other items, Judy's testimony was inconclusive. She testified that the property was donated solely to her, but she also testified that the donation was made to Rodney and to herself. Rodney testified that the gifts were made to him and to Judy jointly. The Court concludes that the gifts were probably made without any specific designation that they were made to one or the other spouse separately. Regardless, Judy has not shown by a preponderance of the evidence or even by substantial evidence that the gifts were made to her individually rather than to them jointly. Article 2340 of the Civil Code provides:

"Things in the possession of a spouse during the existence of a regime of com-munity of acquets and gains are presumed to be community, but either spouse may prove that they are separate property."

■■■ Because of the legal presumption that the property is community, and because Judy has not shown by a preponderance of the evidence that the items were separate property, the Court concludes that these items are community property.

■■■ With respect to other items, Judy asserts that these items were gifts to her from Rodney. Rodney asserts that these were merely items purchased during the community, but that there was no donation by him to Judy. There was no evidence on this point except for the contradictory testimony of the spouses. Because of the legal presumption discussed above, and because the Court finds that Judy has not proved by a preponderance of the evidence or even by substantial evidence that the property was separate, the Court concludes that these items are community property. But even if these were gifts to Judy, the Court would find that the donation would be revoked, and the property would revert to community property status, since the divorce was granted on account of mutual fault. Article 156 of the Civil Code provides as follows:

"In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all of the advantages or donations, the other party may have conferred by the marriage contract or since, and the party at whose instance the separation has been obtained, shall preserve all those to which such party would have been entitled; and these dispositions are to take place even in case the advantages and donations were reciprocally made."

This article obviously considers only the situation of a separation from bed and board obtained by one spouse who is not at fault against another spouse who is. However, the obvious intent is to rescind a

13. These items are: (a) two brass plated candle sticks; (b) metal record stand; (c) cluster single diamond; (d) round 6 inch electric warmer; (e) china gum saver; (f) six oriental demitasse spoons.

donation made to a spouse who is at fault. Since the expressions of the law are dubious, the Court considers the "reason and spirit" of the law in reaching the conclusion that donations between the spouses are rescinded and resume their community status in a divorce granted on mutual fault.[14]

In summary, then, the Court concludes that all items on Exhibit B to the trustee's memorandum (except for the items detailed in footnotes 4 and 13) are property of the former community between Rodney and Judy and constitute property of the estate. The Court has deleted from the trustee's Exhibits A, B, and C all items that are not property of the estate and all items claimed as exempt to which the trustee made no objection. Those Exhibits, thus amended and redesignated as Schedules I, II, and III, are attached to this opinion with the property items numbered to facilitate reference.[15]

Having determined then that the assets listed on Schedules I, II, and III constitute property of the estate which is claimed to be exempt and to which claim the trustee has objected, the Court turns now to decide the merit of the trustee's objections. The trustee has made essentially four objections: first, the trustee asserts that some of the items listed in the schedules are simply not covered by the statute; second, the trustee asserts that the statute does not exempt an entire room of furniture, but only a minimum necessary for the subsistence of the debtor; third, the trustee asserts that luxury items are not exempt under the statute; and fourth, the trustee asserts that only one exemption is available for both Rodney and Judy since this is property of the former community. The Court agrees with the first and third asser-

tions that the trustee has made but not with the second and fourth.[16]

■ The trustee's first argument is that some property is not exempt under the terms of the statute. As discussed above, La.R.S. 13:3881 is relatively specific with respect to the kinds of property that are exempt. The statute exempts "... living room, bedroom, and dining room furniture ..." The statute does not exempt all of the furniture of a home, and the statute does not exempt "furnishings" of these rooms. For these reasons, items 1–14, 16–17, 19, 22, 25, 28–35, 58–63, 66–71, 73–75, 87–88, 90, 93, 94, 96–100, and 104–113 are deemed not to be exempt.[17] The statute exempts "clothing" but does not exempt jewelry and other accoutrements. For this reason, items 76–79 are not exempt. The statute exempts chinaware, silverware, and glassware, but does not exempt sterling silverware, crystal, or decorative china. For this reason, items 43, 50, 56, 80, 84, 85, and 86 are not exempt.

The trustee's second argument is that the statute exempts only a minimum amount of furniture necessary to outfit a room, and does not exempt all of the furniture that the debtor may have in a particular room. The Court would find it practically impossible to enforce such a standard. From the evidence presented in the current case, and for reasons of the limitation established below with respect to luxury items, recreational items, and ornamental items, the Court believes that the trustee's attempt to limit the furniture exemption is not necessary.[18]

■ The trustee's third allegation is that some items are simply so valuable that they should not be exempt. The Court

---

**14.** La. CC Art. 13, 18, 21.

**15.** One should note that these schedules do not list all of the personal property that Rodney and Judy owned; the list includes only the property of the estate to which the trustee objected to a claim of exemption. The trustee did not dispute the exempt status of such utilitarian items as dining tables, chairs, beds, *etc.,* and, therefore, these items are not listed.

**16.** The Court was surprised to see how little authority there is on point. Four briefs were filed by able counsel, without substantial authority cited. The Court's own limited research disclosed no additional authority on point.

**17.** *In re Kimball,* 2 B.R. 560 (Bk.W.D.La., 1980).

**18.** No evidence has been presented concerning fraud or bad faith attempts to exempt assets not intended by the statute to be exempt.

agrees to a limited extent. When an item's value derives primarily from its artistic, ornamental, or recreational value or from its characteristics solely designed to enhance the prestige or status of its owner, then the item is not really an item of "furniture" or "clothing" within the intent of La.R.S. 13:3881. The fair market value of such items is far more than the value of utilitarian items that would serve the same function. The Court concludes that the purpose of 13:3881 is to provide for the subsistence, welfare, and fresh start of a debtor to the end that his family will not be destitute and to the end that the debtor will not become a charge on the state.[19] With respect to the items listed in this case, the Court concludes that items numbered 21, 27, 36, 37, 46–48, 65 and 72 are items whose value is primarily artistic, ornamental, or recreational, or related to prestige and status, and thus are not exempt.

▆▆▆▆ The trustee's fourth assertion is that Rodney and Judy are only entitled to one set of exempt property. The Court cannot agree. First, the Court notes that this is a case in which Rodney and Judy were divorced some time prior to the filing of the petition. With no collusion, Rodney and Judy were actually maintaining two residences. The statute exempts property according to its use, and since the appropriate use was being made by an individual, it is exempt. On a more practical note, the Court thinks that the objective of the statute is to allow individuals to retain at least subsistence assets. It is obvious that Rodney and Judy could not and would not maintain the same residence, and if the Court were to allow only one exemption, then either Judy or Rodney would be deprived of assets that R.S. 13:3881 clearly intended for his or her benefit. The Court simply finds no authority to require two individuals to share a common exemption simply because they were once married if, at the applicable time[20] the parties are divorced, each had a separate residence, and each meets the statutory "use" requirements for an exemption.

The items shown in Schedules I, II, and III are exempt as specified therein, and those listed in this opinion are not. Property claimed by Rodney or by Judy to be exempt but to which the trustee made no objection are, of course, exempt.[21]

For reasons assigned, the property is classified as set forth herein and determined to be exempt as set forth herein. An order will be entered accordingly; the order to be submitted by the trustee.

Schedule I
Undisputed Community Property, and,
Therefore, Property of the Estate
All Items Claimed as Exempt and Objected to by Trustee
Exemptions Claimed by Judy Unless Otherwise Indicated

| Item # | Property Item | Court Determination of Exempt Status* |
| --- | --- | --- |
| | Maid's Apartment: | |
| 1 | 2 lamps | |
| 2 | Clock radio | |
| | Workshop: | |
| 3 | 2/4 Worktable | |
| 4 | 1 metal, 4-drawer file cabinet | |
| | Library: | |
| 5 | Serving table | |
| 6 | Ceramic umbrella can | |

19. The cases cited by Rodney and Judy to this effect are *Mounger v. Ferrell,* 11 So.2d 56 (La. App.2d Cir., 1942) and *Laurencic v. Jones,* 180 So.2d 803 (La.App. 4th Cir., 1965).

20. The applicable time here, of course, is the date of filing of the petition in bankruptcy.

21. § 522(*l*).

| Item # | Property Item | Court Determination of Exempt Status * |
|---|---|---|
| | **Laundry Room:** | |
| 7 | Iron day bed | |
| | **Patio:** | |
| 8 | 1 lounger | |
| 9 | 2 cushioned chairs | |
| 10 | 1 table, 4 chairs | |
| | 2 flower racks | |
| | **Kitchen:** | |
| 11 | 5 bar stools | |
| | **Hall:** | |
| 12 | 1 Kirby vacuum | |
| 13 | Picnic basket | |
| | **Family Room:** | |
| 14 | Gazo mantel clock | |
| 15 | Lamp vase | Exempt |
| 16 | Fireplace tools | |
| 17 | Green rug and pad | |
| 18 | 1 flowered sofa | Exempt |
| 19 | 2 ceramic plant stands | |
| 20 | 1 library table | Exempt |
| 21 | 1 game table | |
| 22 | Flowered rug | |
| 23 | 1 peach sofa | Exempt |
| 24 | 1 cedar chest | Exempt |
| 25 | 2 C.C. Lockwood silks | |
| | **Master Bedroom:** | |
| 26 | 1 chaise lounge | Exempt |
| 27 | 1 antique blanket stand | |
| | **Master Bathroom:** | |
| 28 | 1 iron stool | |
| | **Judy's Study:** | |
| 29 | 1 sleeper sofa | |
| 30 | 1 blue chaise lounge | |
| 31 | 1 set TV trays | |
| 32 | 1 metal file cabinet | |
| 33 | 1 brass lamp | |
| | **Foyer:** | |
| 34 | 2 ceramic turtle plant pots | |
| 35 | 1 Italian serving cart | |
| | **Dining Room:** | |
| 36 | 1 12′ sec. dining table | |
| 37 | 8 chairs | |
| | **Misc. China and Glass Pieces:** | |
| 38 | China gravy boat | Exempt |
| 39 | 8 glass hurricane globes—large | Exempt |
| 40 | Silver edged 5″ glass candy bowl (dog show) | Exempt |
| 41 | 4 blue glass dessert dishes | Exempt |
| 42 | Alvin glass set salt & pepper | Exempt |
| 43 | White glass vase | |
| 44 | Belleck Ireland cream & sugar set | Exempt |
| 45 | Glass mushroom jar | Exempt |
| 46 | Salem dinner plate, 28K gold trim | |
| 47 | RC dinner plate, 22K gold trim (chipped) | |

| Item # | Property Item | Court Determination of Exempt Status * |
|---|---|---|
| 48 | Apple Blossom design dinner plate | |
| 49 | Glass wine decanter (chipped) ........................... | Exempt |
| 50 | Set of Crystal-Bal-Moral by Val St. Lambert Includes—8 sherberts, 6 wine glasses, 6 water glasses, 1 iced tea glass | |

Sets of Glassware:

| 51 | 6 blue glasses w/clear base ............................. | Exempt |
|---|---|---|
| 52 | Blue-green—4 water, 6 sherberts, 6 wine ................. | Exempt |
| 53 | Butterfly set—6 iced tea, 6 water,........................ 6 10″ dessert plates | Exempt |
| 54 | Arcoroc glassware—8 water ............................. | Exempt |
| 55 | 12 clear glass 8″ dessert plates ......................... | Exempt |

China:

| 56 | Limited Edition Clark Bronson Decorator collection—6 dinner plates in vinyl case | |
|---|---|---|
| 57 | Gold (color, not the precious metal) Flatware—Betty Crocker:............................... Includes—3 salad forks, 3 teaspoons 3 dinner forks, 2 knives, 1 butter knife, 1 small serving spoon, 1 sugar spoon, 1 meat fork, 1 slotted serving spoon | Exempt |

---

\* Only items marked "Exempt" are determined to be exempt; all others are determined not to be exempt.

Schedule II
Disputed Property (Claimed as Community Property by Rodney and as Judy's Separate Property)
All Items Claimed as Exempt and Objected to by Trustee
Exemptions Claimed by Judy

| Item # | Property Item | Court Determination All Community (except as marked) | Exempt Status* |
|---|---|---|---|

Maid's Apartment:

| 58 | Recliner | | |
|---|---|---|---|
| 59 | 2 yellow armchairs | | |

Library:

| 60 | Roll-top desk | | |
|---|---|---|---|
| 61 | Chair | | |

Laundry Room:

| 62 | Bronuder rocker | | |
|---|---|---|---|

Family Room:

| 63 | 7 brass plated candle sticks ................. 5 community ......................................2 separate/Judy | | |
|---|---|---|---|
| 64 | 2 striped chairs (claimed exempt by Rodney) .............. | | Exempt |
| 65 | 1 French early 1800 armoire | | |
| 66 | 1 Sears AM-FM cassette, turntable, & 2 speakers | | |

Master Bedroom:

| 67 | 1 G. Miller watercolor | | |
|---|---|---|---|
| 68 | 1 Boeham Porcelain Rose | | |

| Item # | Property Item | Court Determination All Community (except as marked) | Exempt Status * |
|---|---|---|---|

**Hall:**
69  1 G. Miller watercolor
70  1 Salle Middleton print-cardinal
71  1 Salle Middleton print-mallard

**Master Bathroom:**
72  1 Sakowitz—Dark Mink

**Upstairs Playroom:**
73  1 Formica 4′ table
74  1 pair sterling silver
    candlesticks

**Judy's Study:**
75  2 wicker chairs

**Jewelry:**
76  1 12″ cultured pearls
77  1 crystal and diamond chips
78  3 unmounted pearls
79  1 ivory pendant

**Gold, Brass, Pewter Pieces, etc.:**
80  Large brass dinner bell on board

**Misc. China and Glass Pieces:**
81  Glass cinnamon & sugar shaker
    with silver top .................................. Exempt
82  Ardelt-Linville china lemon squeezer .............. Exempt
83  4 glass salt cellars ............................. Exempt

**Set of Dishes—Block Bidosda (Spain):**
84  All

**Set of Gold Flatware—Stausberg Vermeil:**
85  4 salt cellar spoons

**Silver Flatware:**
86  6 Reed & Barton demitasse spoons

NOTE: Items listed on Trustee's Exhibit B as claimed exempt by either party have been deleted from this schedule if the Trustee did not object to the exemption claim. The reason is that such property will be of no consequence to the estate and, consequently, the Court will not consider the ownership issue.

---

* Only items marked "Exempt" are determined to be exempt; all others are determined not to be exempt.

Schedule III
Property of the Debtor
Items Claimed by Rodney as Exempt and
Objected to by Trustee

**I. Property Claimed as Separate and Exempt**

| Item # | Property Item | Court Determination of Exempt Status* |
|---|---|---|

**Property at 9472 Meredith:**

**Living Area:**
87  Wall clock by Elgin
88  Dry sink

| Item # | Property Item | Court Determination of Exempt Status * |
|---|---|---|
| 89 | Pump organ | Exempt |
| 90 | Boxes of books & papers | |
| 91 | 2 love seats | Exempt |
| 92 | Arm chair | Exempt |
| 93 | Tea cart | |
| 94 | Budweiser wall clock | |
| 95 | 3 swag lamps | Exempt |

**Den:**

| | | |
|---|---|---|
| 96 | Vinyl arm chair | |
| 97 | Set of TV trays | |
| 98 | Sofa | |
| 99 | 2 side chest tables | |
| 100 | Onyx gold fish | |

**Bedroom #1:**

| | | |
|---|---|---|
| 101 | 2 wooden arm chairs | Exempt |

**Bedroom #2:**

| | | |
|---|---|---|
| 102 | Maple arm chair | Exempt |

**Bedroom #3:**

| | | |
|---|---|---|
| 103 | Single bed | Exempt |
| 104 | Panasonic tapedeck with two speakers | |

## II. Property Claimed as Community and Exempt

| | |
|---|---|
| 105 | Gun case |
| 106 | Tasco zoom gun scope (broken) |
| 107 | Two wooden gold fish carvings |
| 108 | Two ceramic gold fish |
| 109 | Four carved duck decoys |
| 110 | Composition small David statue |
| 111 | Japanese Samsuisi hat |
| 112 | Carved humidor—India |
| 113 | Carved figure—Kashmis |

* Only items marked "Exempt" are determined to be exempt; all others are determined not to be exempt.