ELECTRONIC CITATION:  2007 FED App. 0006P (6th Cir.)
File Name:  07b0006p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:  KERRYE HILL LEBOVITZ,    )
    )
        Debtor.    )
    )
_____    )
    )
KERRYE HILL LEBOVITZ,    )
    )
        Appellant,    )
    )
        v.    )    No. 06-8039
    )
NORMAN P. HAGEMEYER,    )
CHAPTER 7 TRUSTEE,    )
    )
        Appellee.    )
_____    )

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee, Western Division at Memphis
Case No. 05-38391

Argued:  February 6, 2007

Decided and Filed:  March 30, 2007

Before:  AUG, GREGG, and SCOTT, Bankruptcy Appellate Panel Judges.
_____

### COUNSEL

**ARGUED:**  Ellen B. Vergos, MARTIN, TATE, MORROW & MARSTON, P.C., Memphis, Tennessee, for Appellant.  James E. Bailey III, FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  Ellen B. Vergos, MARTIN, TATE, MORROW & MARSTON, P.C., Memphis, Tennessee, for Appellant.  James E. Bailey III, FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC, Memphis, Tennessee, for Appellee.

---

## OPINION

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge.  In this chapter 7 case, the Debtor appeals the bankruptcy court's order granting the Trustee's motion for turnover and sustaining the Trustee's objection to the exemption claimed by the Debtor in five pieces of jewelry.  The Debtor claims the jewelry is exempt as "necessary and proper wearing apparel" pursuant to Tennessee Code Annotated § 26-2-104.  For the reasons that follow, the bankruptcy court's order is AFFIRMED.

### I.   ISSUE ON APPEAL

The issues in this appeal are (1) whether the Debtor's jewelry constitutes "necessary and proper wearing apparel" pursuant to Tennessee Code Annotated § 26-2-104; (2) whether the bankruptcy court abused its discretion in denying the Debtor's motion to strike an affidavit submitted by the Trustee showing the retail value of the jewelry after the close of proofs; and (3) whether the bankruptcy court erred in failing to instruct the Trustee to consider whether sales proceeds would result in a meaningful distribution to creditors after payment of administrative expenses in determining whether eventually to sell the Debtor's jewelry.

### II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("Panel") has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee has authorized appeals to the Panel.  A final order of the bankruptcy court may be appealed as of right.  28 U.S.C. § 158(a)(1).  The bankruptcy court's order denying the Debtor's claimed exemption of certain jewelry is a final appealable order.  *See Mason v. Young (In re Young)*, 238 B.R. 112, 113 (B.A.P. 6th Cir. 1999).

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013.  A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (citations omitted).

The bankruptcy court's interpretation of Tennessee's exemption statute is reviewed under the de novo standard because it involves a question of law. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 721 (B.A.P. 6th Cir. 1999). "De novo review means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

The bankruptcy court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Humphrey*, 279 F.3d 372, 376 (6th Cir. 2002). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor & City Council v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). Under this standard, the bankruptcy court's decision will be disturbed only if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

## III. FACTS

On October 14, 2005, Kerrye Hill Lebovitz ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On Schedule B, the Debtor listed a "wedding ring and other jewelry" having an unknown value. (J.A. at 11.) This jewelry was claimed as exempt on Schedule C under Tennessee Code Annotated § 26-2-104. The Debtor stated that the amount of the exemption and the market value of the jewelry was unknown. On October 25, 2005, George W. Emerson was appointed chapter 7 trustee. He was succeeded on April 4, 2006, by Norman P. Hagemeyer ("Trustee").

In 2004, before the commencement of the Debtor's case, the Debtor's husband, Dr. Morris Lebovitz, filed a bankruptcy case. Because Dr. Lebovitz is no longer able to practice medicine, he receives disability income of $16,000 per month. The bankruptcy court took judicial notice that Dr. Lebovitz received his bankruptcy discharge on September 16, 2005. After commencement of Dr.

Lebovitz's case, it was discovered that the Debtor co-signed a large loan. As a result, she filed her separate chapter 7 case.

The bankruptcy court found that Dr. Lebovitz and the Debtor have been married for a number of years and have four children. Additionally, the court found that although the Debtor has a real estate license, she is not actively engaged in marketing or selling real estate.

The Debtor owns five pieces of jewelry claimed as exempt. One of them is a five carat diamond wedding ring purchased by Dr. Lebovitz for between $40,000 and $50,000.[1] The Debtor wears this ring daily. It was purchased by Dr. Lebovitz several years after their wedding to replace the Debtor's original wedding ring.[2] Second, the Debtor claimed exempt a pair of diamond stud earrings which are slightly under one carat each. The earrings were given to the Debtor by Dr. Lebovitz approximately eleven years earlier when their first daughter was born. These earrings are worn by the Debtor weekly. Third, the Debtor claimed exempt a diamond drop necklace which aggregates approximately one and one-half carats. This necklace was given to the Debtor by Dr. Lebovitz when their second daughter was born. The Debtor wears this necklace several times a month. Fourth, a diamond tennis bracelet given to the Debtor by her husband as a birthday gift was claimed exempt. It is unknown how often this bracelet is worn. Fifth, claimed exempt is a Cartier watch purchased by the Debtor's husband as a Mother's Day gift. The Debtor stated the watch is not operable, but previously was worn daily. As requested by the Trustee, the Debtor consulted with jewelers to obtain an estimated value of the jewelry. Three jewelers offered to purchase all of the items, with the exception of the wedding ring. A fourth jeweler offered to purchase all of the items for a total of $14,800. He valued the Tiffany wedding ring at $8,000.

---

[1] Although not explicitly addressed in the bankruptcy court's opinion, the Panel notes the record establishes that Dr. Lebovitz bought this ring using a Tiffany's credit card. In his bankruptcy case, he eventually obtained a discharge of the debt owed to Tiffany & Company in the amount of $29,780.05.

[2] The Debtor gave troublesome and conflicting testimony about this asserted replacement. On direct examination, she testified that the original ring was lost and the new, expensive, Tiffany ring was to replace it. On cross examination, she testified that she never wore the original ring, but rather simply put it away, and that when she moved to a new residence, she was unable to find the original wedding ring.

On March 8, 2006, the Trustee filed a Motion for Turnover of Property to the Estate. He sought turnover of the exempted jewelry. The Debtor objected. The Trustee also objected to the Debtor's claim of exemptions. An evidentiary hearing regarding these contested matters was held on May 4, 2006. The Debtor testified that the value of her Tiffany wedding ring is $8,000 and that the aggregate value of the remaining items is $6,000. After the conclusion of the hearing, and before a ruling by the bankruptcy court, the Debtor filed amendments to Schedules B and C asserting values, consistent with her prior testimony, of her jewelry as follows: (1) wedding ring - $8,000; (2) necklace - $2,500; (3) earrings - $2,000; (4) tennis bracelet - $1,000; and (5) Cartier watch - $1,500.

The Trustee subsequently filed another objection to the Debtor's amended claim of exemptions. He objected because the Debtor's values were wholesale values and asserted that the exemptions were legally improper. The Trustee also submitted the affidavit of Les Savell, the same jeweler relied upon by the Debtor to support her stated values at the evidentiary hearing. The affidavit reiterates Savell's prior offer to purchase the jewelry and states that the estimated values are based upon a wholesale valuation. The affidavit further states that retail value is at least double the wholesale value.

After first relying upon Savell's valuation at the evidentiary hearing, but not agreeing with his subsequent affidavit, the Debtor moved to strike Savell's affidvit because (1) it was presented after the close of proofs, (2) it supposedly constituted hearsay, and (3) she was not given an opportunity to cross examine Savell. As her principal argument, the Debtor asserts that value is irrelevant because the Tennessee exemption statute has no monetary limitation whatsoever.

The Trustee responded that the Debtor failed to adequately declare the value of the jewelry before, or at, the hearing. He argues that Savell's affidavit is proper to rebut or supplement the Debtor's statements about Savell's prior opinion of the value of the jewelry.

The bankruptcy court determined that the Tennessee exemption is limited to wearing apparel which is "necessary and proper." Because there was no evidence offered at the evidentiary hearing that the jewelry is needed by the Debtor for current or future employment, the bankruptcy court determined that the jewelry was not "necessary and proper." Utilizing the analysis of *In re Hazelhurst, infra*, the court found that all the items of exempted jewelry were "luxury" items. The

court also found that the Debtor suffered no prejudice by the introduction of Savell's affidavit because the court relied solely upon the value of the jewelry as acknowledged by the Debtor at the evidentiary hearing.

On June 9, 2006, an order was entered granting the Trustee's Motion for Turnover of Property of the Estate, overruling the Debtor's objection thereto, sustaining the Trustee's Objection to Claimed Exemptions and Amended Objection to Claimed Exemptions, and denying the Debtor's Motion to Strike Trustee's Amended Objection to Claimed Exemptions and Attached (Savell's) Affidavit.

On June 19, 2006, the Debtor filed her Motion to Alter or Amend the Judgment. This motion raised only one new issue. The Debtor requested the court to instruct the Trustee to consider whether future sales proceeds would result in a meaningful distribution to creditors after payment of administrative expenses. On July 19, 2006, the bankruptcy court denied the Debtor's Motion to Alter or Amend Judgment. The court reiterated that despite the affidavit submitted by the Trustee, it found the jewelry to be luxury items based *solely* on the values acknowledged by the Debtor at the hearing. The court also further clarified that it was not placing an aggregate monetary limit on the claimed exemptions. The court stated:

> The court placed no dollar limit on the Tennessee wearing apparel exemption, but did clearly recognize the limit placed on the exemption by the Tennessee legislature, that the wearing apparel be *necessary and proper*. Luxury items are by definition not necessary items. Value is important, as Judge Stair acknowledged in the opinion [*In re Hazelhurst*] relied upon so heavily by the Debtor, in determining whether an item is a luxury item. This court determined, based upon the values placed upon the items of jewelry by the Debtor herself, based upon the indicators of what will be considered a luxury item with respect to jewelry found in the Bankruptcy Code and the Tennessee Code, and based upon the failure of the Debtor to testify that the items were necessary to any work she was doing or contemplated doing, that these were luxury items. The Tennessee Code provides an alternative for the exemption of luxury items, the so-called 'wild-card' exemption of $4,000. This can be used to exempt any items of personal property, whether luxury items or not, up to a value of $4,000. To ignore the limitation placed upon the wearing apparel exemption by the Tennessee legislature and argue that that exemption is unlimited, especially in light of the clear dollar

limitation provided in the wild-card exemption, would be a gross misreading of the Tennessee exemption statutes.

(J.A. at 141-42.)

The Debtor timely appealed the bankruptcy court's order.

## IV.    DISCUSSION

A bankruptcy estate consists of all legal and equitable interests in a debtor's property. 11 U.S.C. §541(a)(1).  A debtor is permitted to exempt certain property from the estate.  A proper exemption withdraws property from the bankruptcy estate, and consequently from the reach of creditors.  *Wicheff v. Baumgart* (*In re Wicheff)*, 215 B.R. 839, 842 (B.A.P. 6th Cir. 1998).  A state may decide whether its residents may elect available federal exemptions, 11 U.S.C. § 522, or be limited to the state's exemptions.  *See* 11 U.S.C. § 522(b).  Tennessee has elected to opt out of the federal exemptions.  A debtor must utilize Tennessee's exemptions.  *See* Tennessee Code Annotated § 26-2-112.

An entity objecting to an exemption must establish, by a preponderance of the evidence, that the exemption is improper.  Fed. R. Bank. P. 4003(c); *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 723 (B.A.P. 6th Cir. 1999).  The facts and circumstances of each claimed exemption and the objection thereto must be separately examined.  *Id*.  Exemptions should be liberally construed in a debtor's favor.  *In re Nipper*, 243 B.R. 33, 35 (Bankr. E.D. Tenn. 1999) (citing *Terry v. McDaniel*, 53 S.W. 732 (Tenn. 1899)).  Also, a claimed exemption should be construed in light of the purpose for which it was created.  *See In re Hendrick*, 45 B.R. 965, 972 (Bankr. M.D. La. 1985).

The exemption before this Panel is Tennessee Code Annotated § 26-2-104 which states, in pertinent part:

> (a) In addition to the exemption set out in § 26-2-105 [Tennessee's exemptions applicable to retirement and pensions], there shall be further exempt to every resident debtor the following specific articles of personalty:
>
> (1) All *necessary and proper wearing apparel* for the actual use of debtor and family . . . .;

(Emphasis added.)

The Tennessee Supreme Court has not yet addressed whether jewelry constitutes wearing apparel within the meaning of its exemption statute. Indeed, no Tennessee state court has addressed this issue. The Tennessee exemptions do not include any separate exemption allowance for jewelry. *Compare* 11 U.S.C. § 522(d)(4) (a debtor may currently exempt up to $1,225 in specific jewelry). It is instructive that the Court of Appeals for the Sixth Circuit, in an older decision, affirmed a lower court's holding that diamond rings were exempt under a similar Kentucky statute which exempted "all wearing apparel." *Sherrill v. Leech (In re Leech)*, 171 F. 622 (6th Cir. 1909).[3] In a more recent opinion construing the Tennessee exemption statute, *In re Hazelhurst*, 228 B.R. 199 (Bankr. E.D. Tenn. 1998), a bankruptcy court used Black's Law Dictionary's definition of "wearing apparel." After taking notice of the modern day use of jewelry, the *Hazelhurst* court held that the Tennessee exemption statute includes jewelry.[4] This Panel agrees that some types of jewelry are covered by Tennessee's "necessary and proper wearing apparel" exemption.

The Debtor argues that this exemption is unlimited because it does not contain a monetary limit. This Panel disagrees. The statute imposes a limitation by the phrase "necessary and proper," which is not defined by the Tennessee statute. No reported Tennessee case exists construing the

---

[3] *Leech* involved a claimed exemption of two rings, containing two diamonds and one sapphire, each valued at $2,000. The Kentucky statute exempted "all wearing apparel" with no restrictive terms. The Sixth Circuit affirmed the district court's holding that the rings were exempt. The district court held the rings exempt because they were wearing apparel and because while the statute had fixed limitations of value regarding other kinds of property exempted, it affixed none to wearing apparel. The district court also noted, "If the phrase were 'all *necessary* wearing apparel,' we should be permitted to inquire into the question of necessity for personal ornaments of any kind." *In re Leech*, 171 F. 591, 592 (W.D. Ky. 1908) (emphasis added). On appeal, the Sixth Circuit stated in dicta, "for we conceive that the turning point upon the provisions of the Kentucky statute would be whether these rings were acquired and used as ornamental apparel, or were acquired and kept as an investment of values, as a matter of business, rather than for the purpose of ornament." *In re Leech*, 171 F. at 626.

[4] Courts in states with similar exemption statutes agree that jewelry may be "wearing apparel." *See e.g. Fernandez v. Seidler (In re Fernandez)*, 855 F.2d 218 (5th Cir. 1988) (construing the Texas exemption statute)*; Wikle v. Westhem (In re Westhem)*, 642 F.2d 1139 (9th Cir. 1981) (construing the California exemption statute); *In re Peterson*, 280 B.R. 886 (Bankr. S.D. Ala. 2001) (construing the Alabama statute); *In re Mitchell*, 103 B.R. 819 (Bankr. W.D. Tex. 1989) (construing the Texas statute).

phrase, and no legislative history has been found regarding the meaning of "necessary and proper" within the exemption statute.

In the absence of any reported Tennessee case law or legislative history, this Panel examines the historical purpose of Tennessee's exemptions. Tennessee's exemptions ensure that a debtor retains sufficient property to obtain a fresh start and *provide a debtor with the basic necessities of life, thereby avoiding destitution. Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998) (citing *Arango v. Third Nat'l Bank in Nashville (In re Arango)*, 992 F.2d 611, 613 (6th Cir. 1993)). The Tennessee Supreme Court has stated:

> The public policy underlying our exemption statutes for heads of families is that a creditor should be restrained from having satisfaction of his debt out of certain kinds of property which are *necessary to the maintenance of the families* of improvident or unfortunate debtors.

*Prater v. Reichman*, 187 S.W. 305, 305 (Tenn. 1916) (emphasis added). The *Prater* court also said that "[t]he animals and vehicles named in the schedule are such as were usually owned by such debtors and used by them in the *work necessary to be done to support their families* . . . ." *Id.* (emphasis added). The Tennessee Supreme Court focuses on an intent to provide workers with the means to support their families, providing those things which are necessary to the family's maintenance. As further guidance, the Tennessee Supreme Court has defined "necessaries" as "things required for [one's] sustenance or comfort, and suitable to [one's] means, condition, and habits of life . . . ." *McNairy County v. McCoin*, 45 S.W. 1070, 1070 (Tenn. 1898).

Certainly, it cannot be gainsaid that debtors require "necessary and proper wearing apparel" to be employed and support their families. According to the definition of "necessaries" set forth by the Tennessee Supreme Court, debtors may need "necessary and proper wearing apparel" to attend social, business or professional engagements which are suitable to their "means, condition, and habits of life." The Debtor has a real estate license. However, she is not working outside the home. Moreover, there is no evidence in the record that the Debtor is seeking outside employment. There also is no evidence that the jewelry claimed exempt is necessary for the Debtor's employment or her "fresh start." No evidence exists that any of this Debtor's exempted jewelry is "necessary" or "proper" wearing apparel for her social, business or professional engagements which are in keeping

with her "habits of life." Without question, this "diamond collection" is not needed for the Debtor's sustenance or comfort.

In *Hazelhurst*, the bankruptcy court considered the criteria to determine when jewelry may be "necessary and proper" under the Tennessee wearing apparel exemption. Those criteria are: (1) the nature of the items, *i.e.*, are they commonly worn articles of jewelry such as rings, earrings, bracelets, watches, and necklaces; (2) how often are they worn by the debtor, *i.e.*, frequently, infrequently, or never; (3) what occasions, if any, dictate the wearing of the jewelry; and (4) value.[5] *Hazelhurst*, 228 B.R. at 203. The *Hazelhurst* court also opined:

> While not an element for consideration under the statute, value may nonetheless be important in determining whether an article may be categorized as a luxury item. As such, it might well not be "necessary and proper." The court does not suggest that these are all the criteria that might be looked at in evaluating the jewelry/wearing apparel issue. As stated, each case stands on its own.

*Id.*[6]

The Debtor primarily focuses on *Hazelhurst's* fourth criteria – value. She argues that value is completely irrelevant because the statute places no monetary limit on the exemption.[7] *Hazelhurst* correctly recognizes that a luxury item of jewelry is not "necessary and proper" under the Tennessee

---

[5] Other courts when reviewing similar statutes have considered value. *See e.g., In re Peterson*, 280 B.R. 886 (Bankr. S.D. Ala. 2001) (finding that a watch valued at $3,200 greatly outweighed its utilitarian value and was not "necessary and proper" under Alabama's exemption statute); *In re Hendrick*, 45 B.R. 965, 972 (Bankr. M.D. La. 1985) ("When an item's value derives primarily from its artistic, ornamental or recreational value or from its characteristics solely designed to enhance the prestige or status of its owner, then the item is not really an item of . . . 'clothing' . . . . The fair market value of such items is far more than the value of utilitarian items that would serve the same function.").

[6] The Panel does not suggest that these are the only criteria that should be considered when evaluating the jewelry/wearing apparel issue. However, in this appeal we need not develop, or consider, additional criteria. The bankruptcy court properly focused on the value of the items as determinative in this instance.

[7] If the Debtor is correct, formerly super-rich debtors could move to Tennessee with their "Hope Diamond," file for bankruptcy, and use the diamond as a "fresh start." Tennessee could become a new bankruptcy "haven" for those who decide to convert assets into valuable exempt jewelry.

statute. While the lack of a monetary limit in the Tennessee exemption statute certainly clouds the inquiry, value is a relevant consideration that cannot be ignored as the Debtor urges this Panel to do. "The purpose of exemption laws is to save debtors and their families from want, not to enable them to wear luxurious ornaments at the expense of their creditors." *Millington v. Herbert (In re Millington's Estate)*, 218 P. 1022 (Cal. Ct. App. 1923). What was true in 1923 is equally true today.

The term "proper" in the statute necessitates consideration of value. No reported Tennessee decisions have addressed the meaning of the term "proper" as used in the exemption statute. We must interpret the governing state law from "all relevant data." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). The "relevant data" to be considered includes state appellate court decisions, which are lacking, "state's supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states." *Id.* Additionally, "[w]here statutory language is not expressly defined, it will be given its common meaning." *Burlington N.R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S. Ct. 1855, 1859 (1987); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802-03 (Tenn. 2000) ("[A] court ascertains a statute's purpose from the plain and ordinary meaning of its language . . . .").

In the absence of any "relevant data," this Panel must look to the common meaning of the word. Black's Law Dictionary defines "proper" as "[t]hat which is fit, suitable, appropriate, adapted, correct. *Reasonably sufficient*. Peculiar; naturally or essentially belonging to a person or thing; not common; appropriate; one's own." Black's Law Dictionary 1029 (6th ed. 1990) (emphasis added). Particularly pertinent to this exemption inquiry is the "reasonably sufficient" language in the Black's definition. "Reasonable" is defined as "[f]air, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. . . . Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable." *Id*. at 1265. "Sufficient" is defined as "[a]dequate, enough, as much as may be necessary, equal or fit for end proposed, and that which may be necessary to accomplish an object. Of such quality, number, force or *value as to serve a need or purpose.*" *Id*. at 1433 (emphasis added).

Unless impossible, this Panel must construe the exemption statute "in such as fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S. Ct. 1011, 1015 (1992); *Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96, 104, 109 S. Ct.

2818, 2824 (1989). To completely ignore the value of the jewelry would be to ignore the limiting term "proper." Without question, jewelry of an excessive value is more than "reasonably sufficient." To determine what is "reasonably sufficient" or "of such . . . value as to serve a need or purpose" and is, therefore, "proper," we must consider whether an item's value is more than the value of less expensive utilitarian items that would serve the same function. For example, "[a] watch is an item of everyday life, something worn by most people that could be considered a 'minimum essential of daily life.'" *In re Meyer*, 211 B.R. 203, 215 (Bankr. E.D. Va. 1997) (holding that the debtor's watch purchased for $30 served both a utilitarian and decorative purpose and could be exempted under Virginia's exemption for "wearing apparel"). The Debtor's Cartier watch (with a value of approximately $1,500) far outweighs its utilitarian value. It is beyond fair debate that the value of the Debtor's other claimed exempt jewelry also far outweighs its utilitarian value.[8]

The bankruptcy court found that all of the Debtor's diamond jewelry and the watch are "luxury items."[9] Also, the bankruptcy court noted that the Bankruptcy Code excepts from discharge consumer debts owed to a single creditor aggregating more than $500 for luxury goods incurred in the ninety days before an order for relief is entered. 11 U.S.C. § 523(a)(2)(C)(I). That nondischargeability section provides that "luxury goods and services does not include goods and services reasonably necessary for the support and maintenance of the debtor or a dependent of the

---

[8] The Panel believes that exempting the Debtor's diamond jewelry collection not only runs afoul of the statute but also is outrageous, especially given that the multi-carat Tiffany diamond ring was not fully paid for by Dr. Lebovitz.

[9] Although, the term "luxury item" is not used in the Tennessee general exemption statutes, the term "luxuries" is used by the Tennessee Commissioner of Revenue in its rules and regulations promulgated to enforce the Tennessee Tax Enforcement Act. The wearing apparel exemption under the Tax Enforcement Act is similar to the general exemption for wearing apparel. The tax act exempts from levy "[s]uch items of wearing apparel . . . as are necessary for the taxpayer or for members of the taxpayer's family . . . ." Tenn. Code Ann. § 67-1-1407(a) and (b)(1)(A). The rules and regulations promulgated to administer this tax exemption state, "*[e]xpensive items of wearing apparel, such as furs or jewelry, which are luxuries* and are not necessary for the taxpayer or for members of his family are not exempt from levy . . . ." Tenn. Comp. R. & Regs. 1320-2-1-.07 (emphasis added). The Tennessee Supreme Court has held that an agency's interpretation of the statutes it is charged with implementing, is entitled to great weight if that interpretation is consistent with the statutes. *See Exxon Corp. v. Metro. Gov't*, 72 S.W. 3d 638, 641 (Tenn. 2002). While not binding here, the analogous exemption is enlightening and persuasive. In the Tennessee tax law exemption, *expensive* jewelry is a *luxury*. As decided by the bankruptcy court, value is an important consideration.

debtor." 11 U.S.C. § 523(a)(2)(C)(ii). The bankruptcy court stated, "Those sections taken together indicate that luxury goods may have any value, so long as they are not reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor, but perhaps more clearly become luxury goods when their purchase price exceeds $500." (J.A. at 92.) The court also considered other factors such as the limitation of $1,225 in the federal bankruptcy exemption for jewelry, and the 2005 amendments to the Bankruptcy Code which exclude jewelry with a fair market value of more than $500 in the aggregate (except wedding rings) from the term "household goods." 11 U.S.C. § 522(f)(1)(B). Additionally, the bankruptcy court correctly recognized that Tennessee does not provide a specific exemption for jewelry to augment its conclusion that jewelry may be a luxury item. Finally, the bankruptcy court looked at the Tennessee "wild-card" exemption of $4,000, which may be used for any exempt goods, whether jewelry or otherwise, as further support that the Debtor's diamond collection was in the "luxury" category rather than the "necessary and proper" category.

The Debtor asserts that as a result of the bankruptcy court's analysis, an improper monetary limitation was imposed limiting the Tennessee exemption to $500 as the permissible aggregate value of jewelry. This assertion is incorrect. The bankruptcy court did no such thing. It merely utilized analogous statutes as indicators that the diamond collection was a "luxury" rather than "necessary and proper" under the Tennessee exemption statute.

Given the above, the determination that the jewelry is not "necessary and proper" wearing apparel under the Tennessee exemption statute is correct. The findings of the bankruptcy court are not clearly erroneous and its legal analysis is correct.

The Debtor also argues that the bankruptcy court erred in admitting the Savell affidavit. The affidavit was submitted by the Trustee after the evidentiary hearing and contains opinion by Savell regarding the retail value of the jewelry in question. The Debtor argues that the affidavit should have been excluded from evidence because it was presented after the close of proofs, it contains hearsay, and she was not given an opportunity to cross examine Savell.

In denying the Debtor's motion to strike, the bankruptcy court stated "the Debtor will suffer no prejudice if her motion to strike the Trustee's amended objection and the affidavit of Mr. Savell are denied, because the court finds the items to constitute luxury items, not necessary or proper

wearing apparel, *based solely on the values acknowledged by the Debtor*." (J.A. at 93.) (emphasis added).

The bankruptcy court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Humphrey*, 279 F.3d 372, 376 (6th Cir. 2002). Specifically, the bankruptcy court's decision to allow introduction of the affidavit after the close of proofs is one left to the discretion of the court and will be reversed only for an abuse of discretion. *Noble v. Nat'l Mines Corp.*, 774 F.2d 144, 149 (6th Cir. 1985). It is noteworthy that the Debtor relied upon a portion of Savell's opinion as to value during the evidentiary hearing. There was no abuse of discretion by the bankruptcy court in admitting the affidavit because the record demonstrates that the affidavit was given no weight. The bankruptcy court specifically stated that its conclusion that the jewelry constituted luxury items was "based solely on the values acknowledged by the Debtor." (J.A. at 93 and 141.) Therefore, there was no prejudice to the Debtor, or reversible error, resulting from admission of the supplemental post-hearing affidavit.

Even assuming *arguendo* that the bankruptcy court was incorrect when it admitted the affidavit, any possible error was harmless. "The harmless error standard calls for reversal when the appellate court lacks a fair assurance that the outcome of a [hearing] was not affected by evidentiary error." *U.S. v. Johnson*, 440 F.3d 832, 847 (6th Cir. 2006) (quoting *McCombs v. Meijer, Inc.*, 395 F.3d 346, 358 (6th Cir. 2005)). Based upon the record on appeal, this Panel is convinced that the bankruptcy court did not premise its decision on the retail values set forth in the affidavit. Ultimately, when the diamond collection is sold, the true values of the various items of jewelry will become known to all.

Lastly, the Debtor asserts that the bankruptcy court erred by not instructing the Trustee to consider whether sales proceeds would result in a meaningful distribution to creditors after payment of administrative expenses in determining whether to sell the Debtor's jewelry. This issue was not raised at the evidentiary hearing. It was first raised when the Debtor requested that the judgment be altered or amended.

Consequently, the issue was not properly before the bankruptcy court and is not properly before the Panel. The issue is premature and need not be considered at this time. The proper time to raise this issue is if, and when, the Trustee seeks approval for the sale of the jewelry. Further,

whether the Debtor will have standing to object to any such proposed sale should first be addressed by the bankruptcy court.

Summarizing, the Tennessee exemption statute permits a debtor to exempt "necessary and proper" jewelry, such as a modest wedding ring or a utilitarian watch, not this Debtor's diamond collection.

## V.   CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.